J. R. DANIELS, Respondent, v. JOHN BARTON PAYNE, Agent of the United States Government, Appellant.

(182 N. W. 1010.)

**Master and servant — negligence as to railroad carpenter injured by speeder held question for jury.**

1. In an action to recover damages for personal injuries, where the plaintiff, while employed by the defendant as a carpenter, was traveling with his foreman on a speeder during a heavy snow storm, and where it appears that a gasoline can had blown off the speeder, and the plaintiff at the foreman's direction, had gone back a short distance to recover it, leaving the foreman in charge of the speeder, with a promise to wait for him; that the foreman, during plaintiff's absence, had undertaken some slight repair work on the speeder, allowing it meanwhile to drift with the wind, the plaintiff being struck by the speeder as he was returning with the can, it appearing that the foreman was unable to stop it by the use of the brakes when within a short distance of the plaintiff, as the brakes were clogged with snow and ice; and where the court submitted the case to the jury for a special verdict, it is *held*:

The record presents substantial evidence upon which to base a finding of negligence.

---

NOTE.—Where a special verdict is requested, no instructions are proper except such as are necessary to inform the jury as to the issues made by the pleadings, the rules for weighing and reconciling testimony, and whatever else may be necessary to enable the jury to clearly understand its duties concerning such special verdict as will be seen by an examination of the cases collated in a note in 24 L.R.A. (N. S.) 62, on instruction to jury as to special verdict.

**Trial — in submitting case for special verdict, it is error to read pleadings or the statutory law to the jury.**

2. In submitting a case to a jury for a special verdict, it is error to read the pleadings, stating the issue of fact, the contentions of the respective parties with reference thereto, and to read to the jury the statutory law upon which the plaintiff relies for recovery. Whether such error in all cases be so prejudicial as to necessitate reversal, however, is not decided.

**Trial — in action for personal injuries, appeal for damages on basis of what jury would take to be injured in same manner held improper.**

3. In an action for damages for personal injuries it is improper, in an argument to the jury, to appeal for an assessment of damages on the basis of what they would take to be injured in the same manner that the plaintiff was injured.

**Appeal and error — errors held to require new trial in railroad carpenter's action for personal injury.**

4. Where, in connection with the above error in submitting the case for a special verdict, no instructions are given as to the measure of damages, and where the plaintiff's attorney is shown to have made improper appeals to the jury, and the jury, upon conflicting evidence as to the character and permanency of plaintiff's injury, assessed damages at $4,500, the record does not give the assurance that the defendant has had a fair trial, and a new trial is awarded.

Opinion filed May 2, 1921. Rehearing denied May 27, 1921.

Appeal from the District Court of Hettinger County. *Lembke, J.* Reversed and remanded.

*Young, Conmy* & *Young,* for appellants.

The evidence must affirmatively establish circumstances from which the inference arises fairly that the accident resulted from the want of some precaution which the defendant ought to have taken. Wabash, St. L. & P. R. Co. v. Locke, 112 Ind. 404; 2 Am. St. Rep. 193, 14 N. E. 391 and cases cited.

There is no proof showing parties were engaged in interstate commerce at the time of the injury. Illinois C. R. Co. v. Behrens, 233 U. S. 473; Delaware L. & W. R. Co. v. Yurkonis, 238 U. S. 439; Shanks v. Delaware L. & W. R. Co. 239 U. S. 558-560.

The court erred in failing to charge the jury fully on the issue of assumed risk. Putnam v. Prouty, 24 N. D. 517; Seekett v. Stone, 41

S. E. 564; Robertson v. Burton (Minn.) 92 N. W. 538, 931; B. & O. R. Co. v. Lockwood, 74 N. E. 1071.

*Jacobsen & Murray,* for plaintiff.

Without a motion for a new trial, this court cannot consider the question of the insufficiency of the evidence. Erickson v. Wiper, 33 N. D. 225; Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366.

A motion for a directed verdict must specify the particulars wherein the evidence is insufficient. Yaeger v. South Dakota C. R. Co. (S. D.) 140 N. W. 690; Minder & Jorgenson Land Co. v. Brustuen (S. D.) 140 N. W. 251; Davis v. C. & J. Michel Brewing Co. (S. D.) 140 N. W. 694; Erickson v. Wiper, 33 N. D. 193.

The insufficiency of the proof establishing interstate commerce was in no shape, form, or manner raised in the lower court. The rule is well settled that the appellate court will consider only the ground urged in the trial court. Erickson v. Wiper, 33 N. D. 225.

In any event, failure to establish parties engaged in interstate commerce is wholly immaterial if the plaintiff has established his case under the state statute or common law. Wabash R. Co. v. Hayes, 235 U. S. 86, 58 L. ed. 1226, 1230.

The Federal authorities are uniform upon the proposition that going to and from work is just the same as being engaged in that work. North Carolina R. Co. v. Zachary, 232 U. S. 246, 58 L. ed. 591; Southern R. Co. v. Puckett, 37 Sup. Ct. Rep. 703.

Birdzell, J. This is an appeal from a judgment in favor of the plaintiff for $4,559.50, in an action to recover damages for personal injuries. The plaintiff was in the employ of the defendant as a carpenter on April 7, 1919. On that day he was traveling, with his foreman Jerden, between Mercer and McClusky, on a speeder, a small car propelled by a gasoline motor. They were going east, facing a severe storm of wind and snow. When they were near the station of Pickersville the wind blew a gas can off the speeder. Jerden stopped the car and asked Daniels, the plaintiff, to go back and pick up the can. Daniels walked back a distance, as he testified, of approximately 100 yards (Jerden testifies about 200 feet), picked up the can, and, as he was turning around, the speeder struck him, knocking him down, injuring his back, cutting his head and his chin, and knocking out some of his upper teeth. He was rendered unconscious by the impact, was picked

up by Jerden, and taken to the near-by box-car station of Pickersville. Later he was taken to Turtle Lake, where he received medical attention. He was then taken to a hospital operated by the Northern Pacific Beneficial Association at Brainerd, Minnesota, where he remained for approximately two weeks undergoing treatment for his injuries.

The evidence as to the manner in which the accident occurred is conflicting. The plaintiff and Jerden were the only witnesses giving testimony on this subject. According to the plaintiff, Jerden, at the time of directing him to go back and pick up the can, stated that he would wait; and further, according to his testimony, the car bumped into him just as he was turning after picking up the can. Jerden denied that he had said he would wait, and testified that after the plaintiff left the car he was doing some repair work, fixing the slide lever by tightening the bolt which moves the engine to the gear. While he was tightening this bolt or turning the burr, the wind began to drift the car westward toward the plaintiff. He looked up when he was about 40 feet away from the plaintiff and saw him coming. He continued using the wrench on the burr until he looked up again, when he was about 15 feet from the plaintiff, and, seeing the plaintiff coming along, told him to "look out!" At this time he stepped back on the brake to stop the car, but the brake had gathered snow and ice, and would not take hold. He testified that the car was barely drifting, and that when the plaintiff came to the car he made an attempt to board it, but lost his hold, and the car hit him on the knee, knocking him backward.

At the hospital in Brainerd, plaintiff's teeth were repaired and his wounds generally were attended to. There was a bruised, swollen place in the lumbar region of the back which required an incision for draining off the accumulated blood serum. The plaintiff returned to McClusky about April 22d, but did not go to work at that time. He then went to the vicinity of Mott, where his family operated a farm. He made a second trip to the hospital at Brainerd in the latter part of May, but it seems that he received no treatment. During the latter part of the month of June and the first part of July, the plaintiff took eight treatments of an osteopathic doctor at Mott, named Allen. Plaintiff testified to pains in the head which frequently prevent sleep; to weakness of the back and one knee, rendering him unable to work. But the doctor that gave him attention at the hospi-

tal in Brainerd, and who also examined him at the time of the trial, testified that he could discover no objective pain in the back, but that there was subjective pain manifested when the plaintiff was touched in other regions than that affected by the bruised area; that the knee reflexes were normal, and that the knee of which the plaintiff complained exhibited no swelling or soreness, but that in mobility and flexion there was possibly a little interference with motion. The plaintiff was shown to have made two trips from Mott to South Carolina accompanying shipments of horses, one in December, 1919, and one in January, 1920.

The appellant argues that the evidence of negligence is insufficient to form a question of fact for the jury. This question was presented to the trial court by motion for a directed verdict. We are of the opinion that no error was committed in denying the motion. The jury was warranted in believing the plaintiff's testimony, to the effect that Jerden, at the time of directing him to go back and get the can, stated that he would wait for him. In view of this testimony we are not prepared to say that reasonable men might not find that the defendant, in the exercises of ordinary care for the plaintiff's safety, should have held the car stationary awaiting the plaintiff's return. When the plaintiff turned back, he would be more or less blinded by the storm, and, with Jerden's statement in his mind, would not anticipate meeting the car moving toward him.

It is next argued that there is no proof that the plaintiff was engaged in interstate commerce at the time of the injury. This specification is without merit, as the same rule of liability obtains whether the plaintiff was engaged in interstate or intrastate commerce. No procedural question was raised, the solution of which was contingent upon any provision of the Federal Employers' Liability Act.

In this case there was no motion for a new trial, so the question of the excessiveness of the damages urged by the appellant upon this appeal is not directly involved. There are a number of assignments, however, predicated upon the manner in which the case was submitted to the jury, in connection with which it is proper to refer to the measure of recovery as bearing upon the question of a fair trial. The verdict in this case was a special verdict. Twenty-seven questions were asked, all of which were answered in a manner favorable to the plaintiff. It is unnecessary here to indulge in any criticism of any of these ques-

tions in the light of recent decisions of this court. York v. Utility Co. 44 N. D. 51, 176 N. W. 352, and Nygaard v. Northern P. R. Co. 46 N. D. 1, 178 N. W. 961. The record shows that the court, in submitting the case to the jury for its special verdict, instructed them fully as to the issues raised by the pleadings, and in addition instructed as to the law bearing upon the plaintiff's right of recovery. The complaint and the answer were read to the jury as outlining the issues, and the court read the provisions of the Federal Employers' Liability Act, upon which the plaintiff relied. In submitting a case to a jury for a special verdict, it has been frequently held to be error to give instructions indicating how the answers to certain questions will affect the outcome of the litigation. Morrison v. Lee, 13 N. D. 591, 102 N. W. 223, and cases therein cited; 27 R. C. L. 874; 24 L.R.A. 9, (N. S.) pp. 62 and 70 note. It is the manifest aim of the special verdict statute, §§ 7632 and 7633, Comp. Laws 1913, to enable litigants to obtain the judgment of the jury as to the facts in a case, disassociated from matters of law. As they are not to apply the law to the fact, instructions as to the law can, at best, serve no useful purpose.

While it may be difficult to so frame questions for a special verdict and to give appropriate instructions upon them in such a way as to obscure to the average intelligent juror the effect of the answers, it is scarcely possible to conceive of a more flagrant violation of the policy of the special verdict statute than that which would result from countenancing the full statement of the allegations of fact on the respective sides and the principal provisions of law upon which reliance is placed for recovery. Whether or not this case would be reversed for this reason alone, it is unnecessary to decide; for there are other matters which, to our minds, destroy the assurance of a fair trial.

It appears that while the jury was fully instructed as to the issues of fact joined and as to the law applicable to plaintiff's recovery, there were not only no instructions on the measure of damages, but counsel for the plaintiff, in arguing the case to the jury, appealed to them to base an assessment of damages upon an entirely erroneous standard. He stated to the jury that they would not take $25,000 to have their teeth knocked out and their head bumped on the rail. Such an argument is unwarranted for the reason that the law authorizes the recovery of compensatory damages, not damages based upon an agreed monetary equivalent for voluntary physical mutilation. Reid v. Ehr,

36 N. D. 552, 162 N. W. 903. In view of the unsatisfactory character of the evidence going to establish permanent injuries, the award of damages here appears to be large. We are not to be understood as holding, however, that they are so large as to indicate passion and prejudice if awarded under the evidence here at the end of an assuredly fair trial. Plaintiff's counsel, in the respect indicated and in other respects not necessary to mention, overstepped the bounds of propriety in presenting the case to the jury. This, together with the erroneous practice employed by the court in connection with the special verdict, gives rise to a grave doubt in our minds as to whether the defendant has had the benefit of a fair trial. Altogether, we are of the opinion that in the interests of justice a new trial should be awarded. The judgment appealed from is vacated and a new trial awarded, with costs to abide the event.

Reversed and remanded.

ROBINSON, Ch. J., and CHRISTIANSON, J., concur.

GRACE, J. (dissenting). I am unable to agree with the conclusion arrived at by the majority opinion. With reference to the court reading the complaint and answer to the jury, thus permitting them to understand the issues, if this were error, it was error without prejudice, and hence not reversible.

The counsel for both plaintiff and defendant must have thoroughly stated the issues as formed by the pleadings, in presenting the case to the jury. Certainly, the first thing the counsel for plaintiff would do, in proceeding to present the case to the court and jury, would be to state to the jury the issues formed by the pleadings; and, no doubt, defendant would do the same thing on presenting his side of the case to the jury.

The trial could not well have been had unless this were done. The reference by the court to the pleadings, while giving instructions of law, in the circumstances of this case, was not prejudicial, reversible error.

We are of the opinion that all of the reasons given for the reversal of the judgment are largely technical. The defendant has had a fair

and impartial trial. The negligence complained of has been established by an abundance of evidence.

BRONSON, J., (dissenting). It is difficult indeed to ascertain upon what grounds the majority opinion grants a new trial. This opinion determines that no error was committed in denying the motion for a directed verdict. It admits a meritorious cause of action for submission to the jury. The cause was submitted for a special verdict upon twenty-seven questions. There is no complaint made in the majority opinion that the jury did not answer intelligently this multitude of questions, or that it was in any manner misled by reason of the instructions of the court or the actions of plaintiff's counsel. Neither is it pointed out in any manner that the verdict is excessive or that prejudice to the rights of the defendant occurred. The statement of the pleadings and the principal provisions of the law upon which reliance is placed for recovery, as stated by the court to the jury, are not determined in the majority opinion to be cause for reversal. The majority opinion, however, finds that, in connection with the failure of the court to instruct on the measure of damages, plaintiff's counsel made an unwarranted argument to the jury thereupon. It appears, however, that the court admonished the jury concerning this argument, and further that the defendant has not specified such as error in the assignments of error. Furthermore, the defendant made no motion for a new trial. The majority opinion states that, in the interest of justice, a new trial should be awarded. As a platitude, this is fine sentiment; but, as a reason for reversing a meritorious cause of action where no prejudice, bias, or specific error are shown, it serves, in my opinion, to bring orderly administration of justice into disrepute. This reversal, in this case, is not based on the reception, improperly, of evidence; practically it is based upon the action of the court's officers, namely, the trial judge and plaintiff's counsel. The thought apparently is that this jury, to whom was submitted proper evidence for its consideration, and who were required to, and did fully, answer twenty-seven questions concerning this evidence, were unfairly or improperly influenced by the trial court in stating to them too much concerning the pleadings and some general propositions of law, and too little concerning the measure of damages. In my opinion, the reversal in this case is based purely on technical procedural grounds. It discredits the intelligence

and integrity of the jury in this case, and serves to give added fuel and flame to the public discontent concerning delay and technicality in court procedure.