[File No. 5842.]

JOSEPHINE CROSBY, Respondent, v. MINNEAPOLIS, ST. PAUL & SAULTE STE MARIE RAILWAY COMPANY, a Corporation, Appellant.

(237 N. W. 803.)

Opinion filed August 1, 1931.

*George A. McGee* and *John E. Palmer,* for appellant.

294

*E. R. Sinkler, G. O. Brekke* and *B. H. Bradford,* for respondent.

BURKE, J.  This is a personal injury action in which the plaintiff recovered a verdict for $8,000.

At the close of all the testimony the defendant moved for a directed verdict and the dismissal of the action which was overruled, and after verdict, moved for judgment notwithstanding the verdict or for a new trial, and from an order denying the alternative motion and from the judgment entered on the verdict the defendant appeals.

On the morning of October 30th, 1926, the respondent, Mrs. Josephine Crosby, in company with three other ladies drove from their homes in Portal, N. D., in Mrs. Holmes' four-door, left-hand drive automobile to the town of Flaxton, to attend a sale, advertised for that day, in a store at Flaxton.  Mrs. Holmes rode in the front seat and drove the car, with her was Mrs. Richard Wagner; and Mrs. Crosby, the respondent, sat on the left hand side in the back seat, Mrs. Chezik sitting on the right hand side.

There are three tracks in the town of Flaxton crossing the highway. There was a train of cars on the first track and after the ladies crossed over the first track, driving very slowly, and while approaching the

center track they saw two box cars coming towards them very slowly, and just as they got on the track with the automobile it stopped; and it is the contention of the plaintiff, that as she was getting out of the automobile and while she was standing on the running board of the car something struck her in the back, or she struck something and was injured.

It is the contention of the defendant and appellant that the respondent was out of the automobile and some thirty or forty feet away from it when the box cars struck the automobile.

Mrs. Crosby testified: "I went to Flaxton with Mrs. Holmes in her Dodge sedan, Mrs. Holmes driving. She and Mrs. Wagner in the front seat and Mrs. Chezik and myself in the back seat. As we drove up, there was a train standing there on one of the tracks. I think it was on the first track. I think Mrs. Holmes stopped, because we were all looking out and kind of worried about it. When we got to the second track we saw those box cars coming right upon us. I couldn't say how close but they were right upon us and I really think in the excitement what happened, probably, Mrs. Holmes stopped the car. It stopped on the track. I couldn't say for sure but the box cars were right there. To me they seemed not any further away than that second seat. They just seemed looming right up. Mrs. Chezik screamed and we all started to scramble to get out. Mrs. Chezik attempted to get the door open and didn't, so I reached over and opened the door. Mrs. Wagner got out first and then Mrs. Chezik got out and I can remember seeing Mrs. Holmes in front of me in the second seat and then I attempted to get out and got out. Just as I was getting out something hit me or I hit something else, and I know I was scrambling on my feet, catching myself from falling, and I just got away and didn't think much about it. Well, of course, I was scared, I moved as rapidly as possible to escape. I was struck in my back just through here. It has hurt me from the top of my neck to the bottom of my back. No whistle was blown, nobody was guarding the crossing." Ques. "Was anybody that was in the car caught by the automobile?" Ans. "Yes, Mrs. Holmes was. She was just stepping on the ground when it started to push the automobile and it pushed her that distance." "All her clothing was torn off and she was bruised. When the car was pushing the automobile she was underneath. There

were two box cars no engine attached to them." Ques. "Now Mrs. Crosby did you think you were hurt at the time? Ans. "No I don't think I did, I was so excited and nervous. In the next day or two I had a great big black spot as large as both my hands the place where I was struck. They remained a long time." Ques. "Now Mrs. Crosby when did you first realize that you were injured?" Ans. "Well, of course, I felt mean that day, but I had always been real strong and I just sort of kept on going. I thought I had just wrenched myself, or just bumped myself, when I saw the black there I didn't think much about it for a little while. I never received any injury to my back before. It got worse all the time. I went to see Dr. Parker the Soo physician at Portal, I am not sure about that, in November maybe, the first of November I am not sure. I went to see him the second time. He examined my back that time and told me to come back for an electric treatment. My back seemed to get worse instead of better I just maybe had hurt myself a little bit, and I thought it would get better but it seemed to be getting worse. During the time my sister was with me she would steam it and rub it with alcohol and liniment maybe twice a day. I would take aspirin and lie down. Mr. Crosby rubbed me also. I went to see Dr. Cameron just before or right after Christmas. I went to see Dr. Woods, a chiropractor between forty and fifty times. Dr. Stone examined me twice I believe, and Dr. Ewing and Dr. Landis at Kenmare. After the accident I went back to my home. I tried to eat dinner and I couldn't I laid down awhile. My sister was sick, and she had told me about a girl and I got up and dressed, and went out there and got the girl for my sister, and that evening I went to Mrs. Johnson's about a mile in the country. Prior to the injury I did my own work but have not been able to do it since my back has hurt me. I get up in the morning usually and get the children. I have a little girl living with me and my daughter, and get them off to school nearly every day and then I go and lay down for a couple of hours, my back does not hurt so much sitting down as it does standing up. Yes, I drive an automobile and have driven it many times since I was injured. Two years ago we drove to Denver. I think we drove it in five days. I feel better when I am driving than wnen I am sitting. We were in Denver seven weeks. I am forty-seven years old and vary from 180 to 200 pounds, and that was about my

weight when I was injured." On cross-examination—"Mrs. Wagner got out of the car first, Mrs. Chezik next and I was next. I think I was just in the act of getting out of the automobile when the box car struck the automobile." Ques. "Well, do you want the jury to understand that you were in the automobile when it was struck." Ans. "No, I think I was on the running board I feel sure of that. No, I was not twenty-five or thirty feet in the middle of the road away from the car when it was struck." Ques. "Did you know that you were struck or got this blow when you were getting out?" Ans. "Well, I don't. I didn't think much about it. I guess I just—. Yes I have an independent recollection, I am sure I have, I know that something struck me in the back and sort of threw me forward when I was just catching myself without falling down. I do not know what hit me. I ran across the tracks towards town. Mr. Crosby came down from Portal and we went home. I lay down awhile and then took my car went out in the country, and that evening went to the Johnson place. Yes my back was hurting me all the time. We had our supper out at the Johnson place. I knew Mrs. Johnson for about twenty-five years, not especially friendly, neighbored back and forth maybe once a year. Yes, the accident was the subject of conversation at Johnson's place. I think I told Mrs. Johnson how it happened." Ques. "Did you tell her that you didn't lose your head, and that your husband was very proud of you because you didn't lose your head?" Ans. "Well, I might have said that." Ques. "Did you tell the Johnson's that you were lucky that you didn't get hurt?" Ans. "Well, I might even have said that, because—" Ques. "Well did you?" Ans. "Well, I can't say for sure. I don't believe I could tell you our conversation. I presume I told her about the accident. I didn't say there, that I went back and pulled Mrs. Chezik out. We went home soon after eight o'clock. Dr. Parker was the first doctor I went to see. I am not sure, maybe two or three weeks after the accident. I saw Dr. Parker again in another week or two and next when I came to Minot." Ques. "Isn't it a fact, that the first time you consulted Dr. Parker was in February, 1927?" Ans. "No I don't think so. It was before Christmas I know. In December. The first time was in November and the second time was in December just a short time after the first time. I did not go to see Dr. Parker again. I went to see Dr. Woods, but I couldn't say for

sure just when it was. It was just before or just after Christmas. He had treated me ten or twelve years before for chronic appendicitis and gall bladder trouble. Dr. Parker was the first doctor I saw, maybe, two or three weeks after the accident. He did not make an examination at that time. I saw Dr. Parker again in a week or two, that would be about four or five weeks after the accident. I can't say for sure. Yes, I presume this action was started in January, 1927, and before I started the action I saw Dr. Woods. The first time I saw Dr. Parker was in November and the second time in December. Miss Strand, a chiropractor, treated me at Portal and other chiropractors, a doctor Jones of Minneapolis years ago. I couldn't say for sure that the black spot was there when Dr. Parker examined me. It stayed there quite a while. I don't remember just how long and then it went away. I did not give a tea party on November 10th. It was at my house, the club gave it. I was around but I didn't do much. Yes, Mrs. Nireen was injured in the winter of 1926 and 1927, I believe she fell downstairs, and I went to see her. I couldn't say for sure that the black spot was there in January. I did not say to Mrs. Ruppert, that I got out of the accident without a scratch or that my back had been weak and bothered ever since Phyllis was born, or that I used a pillow in the car. I did not say to Mrs. Onstine that I was not injured. I might have talked to Mrs. Wagner, but did not say we can be thankful we didn't get hurt. None of us were hurt, except, Mrs. Holmes. If I talked with her it was saying that I was not seriously hurt, or something to that effect. We were at Swenmunsen's I think two or three weeks after the accident. She was sick had fallen and hurt herself, and I took something out to her. I did not say to her, that I had not been hurt a particle, nor that I was as cool as a cucumber, nor that I opened the door and was the first out, or that I was out before the car was hit. Yes, I gave a dinner to twelve or fourteen people." This is the only testimony in the case which in any way connects the plaintiff with an injury. On the 4th of November, 1926, fifteen days after the alleged injury, the plaintiff signed the following statement on each page thereof, there being three pages.

Statement of Mrs. S. O. Crosby, Portal, N. D. in the case of Mrs.

C. T. Holmes, injured at Flaxton, N. D., October 20th, 1926. Taken at Portal, November 4th, 1926.

"Says:

On the above date I went to Flaxton with Mrs. C. T. Holmes, we rode in Mrs. Holmes' Dodge Sedan, Mrs. Holmes driving. We went over to attend a sale which one of the stores was giving. Mrs. Wagner and Mrs. Chezik accompanied us.

We approached the Soo Ry. from the south on Highway 5 & 9. I cannot recall whether there were any box cars on either side of the Main street crossing. We slowed down, I imagine we stopped before going over this crossing. We were going very slowly when we approached the crossing. I did not see anyone around the crossing or on it. I am sure there was not anyone on this crossing. I did not see anyone try to flag or stop us.

When we were quite a little distance from this crossing I seen a freight train or engine.

The engine appeared to be standing up near the coal dock. We spoke about this at the time and for this reason were on the lookout.

We went over one track and possibly more. But I think that the car was hit on the second track. When I first saw the box cars, they were coming from the west, these cars were not attached to any engine, they were moving slowly, not over ten feet away. Our car was just about on the track. I was sitting in the rear seat with Mrs. Chezik. Mrs. Chezik was trying to open the door. I opened the door and jumped out on the ground.

All of the others jumped out of the car. Mrs. Holmes was the last one out and the car was struck right after Mrs. Holmes got out.

Mrs. Holmes was knocked down under the auto. The box cars struck the auto and shoved east off of the crossing. Mrs. Holmes screamed when she was knocked down and then stopped. But she was conscious when taken out of the wreckage.

This accident occurred around 10:00 A. M. or 10:15 A. M.

Quite a crowd collected soon after the accident. Several men picked Mrs. Holmes up and carried her to the hotel. Mrs. Wagner and Mrs. Chezik both were very excited and nervous.

Mrs. Holmes was dragged quite a distance. Her clothing was badly

torn, her face and limbs were badly bruised. She was covered with blood. Her shoes and stockings were torn off and both legs bruised and skinned.

Dr. Wells was out of town but Mrs. Wells gave first aid. Mrs. Wells is a doctor also.

The car was a Dodge Sedan and was badly smashed.

This was a clear day.

(signed)   Mrs. S. O. Crosby."

Mrs. Holmes who drove the car and was badly injured, testified: "As I approached the track Mrs. Chezik screamed, and the car stopped either killed or otherwise, in the middle of the track. After she screamed I looked, and I saw the box cars approaching, and all I remember is, that they were all out, I was the last one out, and as I went to step out the box car hit my car and knocked me down, as far as I know the others were all out. I think I had one foot down as near as I could remember, I was just about out."

Mrs. Richard Wagner testified: "When the car stopped on the crossing the three of us jumped out and were clear of the automobile when it was hit. Mrs. Chezik and Mrs. Crosby was with me, and we went in the same direction and was between thirty and forty feet from the car when it was struck. Two or three weeks after, I saw Mrs. Crosby at the hospital and she said, 'We could be thankful that we didn't get hurt.' We were at the hospital to see Mrs. Holmes."

Mrs. McArthur testified: "I and Mrs. Jerrittt went to Flaxton to attend the sale. I crossed the track and parked my car in the business block beyond the crossing, I heard a scream, I jumped out and looked out up toward the railroad and I saw Mrs. Crosby standing in the middle of the highway. I should say she was about forty feet from the box car. Yes, I have known Mrs. Crosby for a long time, and I know she used a pillow in the car to support her back before that, between her back and the back of the car. We discussed the accident at my house and she said, that 'Mrs. Chezik was so stupified that she couldn't open the door and Mrs. Crosby leaned over and opened the door and ran.' "

Mrs. Jerritt who was with Mrs. McArthur testified: "When I got out of the car I heard a scream. I looked down in that direction I saw a lady standing in the road I knew it was Mrs. Crosby. I have

known her twenty years, I should say she was thirty or forty feet anyway from the automobile."

F. F. Burchard who was staying at the Siebert Hotel about 150 feet from the crossing and was in the writing room facing the railroad crossing had his attention called to the incident on the railroad track by a traveling man. He looked out a large window and states, "that the box cars were probably 15 or 20 feet away from the automobile, three of the women were out of the car when I saw it, they were running away from the car, and I saw one woman get out of the car just about the time that the car struck the automobile."

Dr. Leavitt was also at the hotel, and he testified that, "Mrs. Holmes was the one that was injured, they pulled her out from under the car, and when I got there I examined her and found there were no fractures. I did not have any conversation with Mrs. Crosby, but I heard Mrs. Holmes ask her if she was hurt, she replied, that she wasn't."

Mrs. Floy Hilborn testified: "I have known Mrs. Crosby for thirty-five years. I heard Mrs. Crosby talking about the accident in Doerr's store. Mrs. Crosby said: 'Mrs. Chezik was sitting next to the door, she was so frightened she could not get the door open and Mrs. Crosby said, I reached over and slipped out ahead of her.' Mrs. Chezik and Mrs. Wagner got out and Mrs. Holmes was the last one, and the box car struck her and she was badly injured, was not I lucky to get off without a scratch or a bruise?' "

Pauline Christianson testified: "On the 20th day of October, the day of the accident, I saw Mrs. Crosby and talked with her at the auction sale. I asked her about the accident and who was hurt? I understood that Mrs. Chezik was hurt, she said, 'No, Mrs. Chezik was not hurt any, but Mrs. Holmes was hurt.' "

Sidney Smith testified: "I saw Mrs. Crosby the morning after the accident in Holmes' backyard. We were discussing the accident and I said, you ladies were very fortunate that you were not injured, and she said, 'no, we were not hurt Mrs. Holmes was the one that was injured.' "

Mrs. Onstine testified: "I have known Mrs. Crosby more than twenty years. On the afternoon on the day of the accident, I asked Mrs. Crosby who was hurt, and she said, 'Mrs. Holmes is the only one that is hurt.' "

Elizabeth Metzgar testified: "I have known Mrs. Crosby twenty-five years. I have seen her since the accident working at her sister's, and saw her pull water home in a milk can on a sled, a large cream can. I had talked with her about her having a lame back before the accident. She came to my house one morning, said she had lost a good sofa pillow out of the car that night at Flaxton. She said, 'you know since the baby was born my back has always been sore.' She took massage for her back before the accident. She took from Miss Jones in Minneapolis, right across the street from the Raddison, that would be fourteen years ago I think. I went up with her one time when she took these treatments from Miss Jones for the back and side she complained of. She told me that she took treatments in Portal I think from Miss Strand. Mr. Crosby helped with the housework before the accident. I haven't been in the house since."

Charles Erickson testified: "I was at the Swenmunsen house two or three days after the accident. Mrs. Crosby and her mother and others were there. Mrs. Crosby said, 'Poor Mrs. Holmes got pretty badly hurt,' she said, 'The rest of us got off pretty lucky.' "

Mrs. J. S. Swenmunsen testified: "My birthday was on the 23rd, and Mrs. Crosby came on the 24th in a kind way and brought me some little truck. Mrs. Crosby said she thought they would get across the track because the car just ahead of them got across. Mrs. Chezik was sitting close to the door and was too nervous to open it. Mrs. Crosby is always so nervy, that she reached over and opened the door and stepped out. She was the first one out. She said, 'I was just as cool as a cucumber when I stepped out there. We got out of it pretty lucky, we didn't even get a scratch. It was only Mrs. Holmes that got hurt.' She said, 'The car didn't get struck with the box car until Mrs. Holmes was getting out.' "

Mrs. John Johnson testified: "I have known Mrs. Crosby around twenty-four years. She visited at my house the day of the accident she was there for supper. She drove out in the car to my place. She told me about the accident. She said she saw that there was danger and she jumped out of the car. Looking back she saw Mrs. Chezik stupefied and she reached in and pulled her out of the car. She said she was not hurt, that she got away lucky because she was not hurt. She said, and when Mr. Crosby came down there, and she told him how she had

acted he thought she had acted with wonderful composure and felt proud of her."

Mrs. Rose Ruppert testified: "On November 10th, 1926, I was at a party at Mrs. Crosby's home given by the Ladies' Club there. She was moving around and making us comfortable and serving us. I saw Mrs. Crosby the next morning after the accident, I asked her how she was and she said, 'Why you know I got out without a scratch, the only one that was hurt was Mrs. Holmes.' I heard her also, I think it was in Bakedahl's store. Mrs. Crosby was talking to some ladies about the accident and she was just saying how lucky they were, that nobody was hurt but Mrs. Holmes."

Dr. Stone, Dr. Cameron, Dr. Wood, a chiropractor, and Dr. Anderson, an osteopath, testified: that they found an abnormal condition of the spine about the seventh or eighth dorsal vertebra, but it was impossible to tell whether there had been a fracture or not; that the condition was caused by violence of some kind and in the opinion of Dr. Stone and Dr. Cameron it was a permanent condition.

Dr. Erenfeld, Dr. Haroldson, Dr. Landes, and Dr. Ewing examined the plaintiff, and testified that they found nothing abnormal with her back or spine. All of the doctors took X-ray pictures from different angles and their opinion was based partly upon the physical examination and partly on the X-ray pictures.

All of the plaintiff's upper teeth had been extracted sometime or other, a number of her lower teeth were gone and many of them were filled with large fillings but the X-ray pictures of her remaining teeth do not show any infection or disease. Her tonsils had been removed at some time. She is much overweight and the testimony of defendant's expert witnesses is to the effect, that if there had been a permanent injury to the plaintiff as she claims, it would have caused a great deal of pain at the time, and if at the time, due to the excitement of the occasion the plaintiff did not realize that she was hurt she would have realized it very soon after.

The defendant has assigned a great many errors, from 1 to 44 relating to leading questions and the repeating of answers given by a witness, as for example, referring to the box cars on the track plaintiff's counsel asked, "And were they coming at you?" "You said you struck something or something struck you?" "Did your condition

gradually grow worse?" "You say you found an abnormal condition of the spine?" One of the doctors having testified that in his opinion plaintiff was suffering from an injured spine. Plaintiff's attorney asked the question, "From violence?" "Were you scared?" "Did you move as rapidly as possible in order to try to escape?" "After you were struck by something or something struck you did you get clear of the automobile?" "Did you think you were hurt at the time?" "Had your back become worse?" And so all through the examination of plaintiff's witnesses there appear many leading questions and many repetitions of the answers given to questions by plaintiff's witnesses, especially when they were important to plaintiff's case.

In the case of State v. Hazlett, 14 N. D. 490, 105 N. W. 617, this court said:

"Whether leading questions shall be permitted or not is necessarily very largely discretionary with the trial court, and its rulings in that respect will not be disturbed, unless it is apparent from the record that the discretion was abused to the prejudice of the appellant. It is often necessary to resort to leading questions in order to elicit facts from a witness, who, because of hostility, ignorance, diffidence or other reasons will not or cannot give fair and full answers. . . . The general rule, however, is that leading questions should not be allowed. . . . The rule is a salutary one, and should never be departed from unless the circumstances are such as to warrant an exception; . . . If the record shows that the circumstances did not in fact justify the departure from the rule, and the violation of the rule is such that prejudice to the objecting party may be reasonably inferred, the appellate court will not hesitate to reverse on that ground.

The action of the court in refusing to allow leading questions after a similar question had been answered was approved by Judge Taft in the case of Manufactures' Acci. Indem. Co. v. Dorgan, 22 L.R.A. 620, 7 C. C. A. 581, 16 U. S. App. 290, 58 Fed. 945, in the following language:

"We fully approve the action of the court in refusing to allow these questions to be put after a similar one had been once answered. The practice of counsel in repeating the question for the purpose of emphasizing the answer with the jury is not to be encouraged."

It is more prejudicial, however, to repeat the answer of the witness

with emphasis, and an inflection which brings it, and keeps it prominently before the jury so as to enable counsel to make an argument while introducing his evidence. Even "the trial judge has no right or power to ask questions of a witness for the purpose of emphasizing the testimony previously given." First State Bank v. Hare (Tex. Civ. App.) 152 S. W. 501; Cedar Rapids Nat. Bank v. Carlson, 156 Iowa, 343, 136 N. W. 659; South Omaha v. Fennell, 4 Neb. (Unof.) 427, 94 N. W. 632.

There was no reason for departing from the rule in this case. The plaintiff was an intelligent, willing witness of mature years, and the leading questions and the repetition of plaintiff's answers should not have been permitted.

Appellant assigns as error the following instructions: "You may allow plaintiff damages for her mental and physical suffering if any such has been proved." Nowhere in the instructions does the trial judge state that plaintiff's right to recover for mental suffering depends upon whether she received a physical injury due to the negligence of the defendant, and it is well settled that there can be no recovery for mental pain and suffering alone resulting from the mere negligent act of another. The cases showing that the courts are practically unanimous in holding that no recovery can be had from an act of mere negligence without physical injury are compiled and cited in the notes in 23 A.L.R. 365; 44 A.L.R. 428; and 56 A.L.R. 657.

In the instant case, there is no evidence of any physical injury at the time of the accident, except the testimony of the plaintiff to the effect that she felt something strike her in the back or she struck something as she was getting out of the car. This testimony is contradicted by Mrs. Richard Wagner, Mrs. McArthur, Mrs. Jerritt, and F. F. Burchard all eyewitnesses of the accident, and it is contradicted by many other witnesses who testified to hearing the plaintiff say, that she was the first one out of the car, that she was not hurt, and she was lucky to escape without a scratch. She went to the sale after the accident the same day, and according to her own testimony, at five o'clock on the day of the accident she drove her car into the country to get a girl for her sister. She went to a party on the same night of the accident. She went in her car, driving a great part of the time,

to Denver, Colorado, a short time after the accident. She made no complaint to a doctor until late in November and was not treated by a doctor until January when she was treated by a chiropractor, Dr. Woods, about the time she sued the defendant. On the 4th day of November, fifteen days after the accident she signed a statement in which she said, "Mrs. Chezik was trying to open the door. I opened the door and jumped out on the ground all of the others jumped out of the car. Mrs. Holmes was the last one out and the car was struck right after Mrs. Holmes got out." No claim at that time that she was injured or that anyone was injured but Mrs. Holmes. The doctors who testified as witnesses for her and to the effect that there was something abnormal about her spine could not, or did not tell how long the abnormal condition existed and there is evidence that years before she was treated by chiropractors and osteopathic doctors for her back, and no evidence of treatment by a regular physician or surgeon. Most of her treatments were given by Dr. Wood both before and after the accident, and he testified: "Well, it is the function of the chiropractor to straighten up the spine, or loosen up the vertebra," and plaintiff says that when she was treated years before by Dr. Wood he treated her for appendicitis and gall bladder trouble.

The jury should have been instructed that they could not find damages for mental suffering unless they first found that there was a physical injury caused by the negligence of the defendant, and that the mental suffering was the result of such physical injury. Under the instruction given, the jury could have found for the plaintiff and assessed damages for mental suffering even though they found that there was no physical injury as they well might have found from the evidence. This was prejudicial error for which there must be a new trial.

It is also the contention of the appellant, that the verdict is excessive and the result of passion and prejudice, and that the argument and statements made during the trial by counsel for respondent aroused the passion and prejudices of the jurors. It is difficult to see how the jury could have found a verdict for the plaintiff for $8,000, except upon the theory that the verdict was the result of passion and prejudice.

A part of the argument assigned as error is as follows: "Gentlemen of the jury, I assume you have wives of your own. Take your own

wife put her in the same position and you might get a better picture, make a mental picture of your own wife acting under the same circumstances and from that draw a conclusion as to the loss of time, inability to take care of her affairs the result with respect to her mental attitude. Get that in your mind and then you will have a better focus on just what the condition is with respect to Mrs. Crosby." This argument was certainly not based upon any of the evidence in the case and was not a reasonable inference drawn therefrom. If it was not a direct appeal to the prejudice of the jury why was it made? For a juror to put his wife in the position of the plaintiff was the same as putting himself in her place and surely a juror would not be competent to sit as a juror in his own case. Daniels v. Payne, 48 N. D. 60, 182 N. W. 1010.

In Thomas v. Illinois Power & Light Corp. 247 Ill. App. 378, the court said:

"We are of the opinion, however, counsel erred in his argument in attempting to have the jury put itself in the position of the appellee."

In Stone v. Sinclair Ref. Co. 235 Mich. 53, 209 N. W. 118, the Michigan court said: "In this class of distressing and tragic cases which inevitably stir impulses of sympathy in the minds of jurors, reflections by comparison, bringing the thought home to themselves, are in their tendencies recognized as appeals beyond the proofs by which pecuniary damages must be measured, and liable to be reflected in the amount of the verdict. McDonald v. Champion Iron & Steel Co. 140 Mich. 401, 103 N. W. 829; Jolman v. Alberts, 186 Mich. 643, 153 N. W. 11; Daly v. Pere Marquette R. Co. 197 Mich. 341, 163 N. W. 883. There is room for inference that the tendency was of that import in the instant case." Wells v. King, 219 Ky. 201, 292 S. W. 777; Alabama G. S. R. Co. v. Carroll, 28 C. C. A. 207, 52 U. S. App. 442, 84 Fed. 772; Judd v. Rudolph, 207 Iowa 113, 62 A.L.R. 1174, 222 N. W. 416.

A statement made by counsel for the plaintiff during the trial assigned as error is as follows: Question by defendant's counsel, "Mrs. Wagner you didn't—you testified in the Chezik case at Bowbells, didn't you?" Plaintiff's counsel, "Now your honor that is objected

to as very clever coaching." The court, "Sustained." Plaintiff's counsel: "She has already testified, that she testified in the Crosby case and testified relative to this conversation in the Crosby case. As a matter of fact she never testified in the case at all and she knows it." This is a very strong statement made by a highly respectable, well-known lawyer in his home town concerning a stranger who appears as a witness in a case tried on a change of venue from another county in the state. It in effect, charges her with wilfully giving false testimony. If the witness knew that she was not a witness in the former trial and that she did not testify at the former trial to a certain conversation with Mrs. Crosby, she knowingly gave false testimony. The transcript of the evidence in the former trial was introduced in evidence and it shows that Mrs. Wagner was a witness in the former trial, and that she did testify to a certain conversation with Mrs. Crosby. Mrs. Wagner's testimony appears on pages 88 to 92 of the transcript inclusive. The conversation referred to was one she had at the hospital with Mrs. Crosby about two weeks after the accident. She says on page 90 of the transcript: "I believe it was the first time I seen Mrs. Crosby after the wreck, was at the hospital when she was visiting Mrs. Holmes, and when I came and she said how lucky we were that we did not get hurt." In the transcript taken at the last trial now before us on page 159, Mrs. Wagner testified: "I met Mrs. Crosby at the hospital maybe two or three weeks after the accident. We were there to see Mrs. Holmes, and Mrs. Crosby said that we could be thankful that we didn't get hurt." Her evidence is in substance the same on the important and material evidence which she gave at both trials, and the statement of counsel was very improper, prejudicial and wholly groundless.

The order and the judgment appealed from are reversed and the case is remanded for a new trial.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.